IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHELLIE GIBBS,<br><br>    *Plaintiff*,<br><br>v.<br><br>TRANS UNION LLC, et al.,<br><br>    *Defendants.* | Case No. 2:21-cv-00667-JDW |

### MEMORANDUM

This case is one of dozens in this District that challenges the way that Trans Union LLC reports on credit reports for credit accounts that had a past-due balance but that a consumer has now paid in full. Shellie Gibbs alleges that Trans Union's credit reporting is inaccurate and will give potential creditors a misleading history about her. The Court disagrees. Creditors can only read Ms. Gibbs's credit report one way, and the story in that credit report is an accurate one. The Court will therefore grant Trans Union's Motion For Judgment On The Pleadings.

**I.   BACKGROUND**

    **A.   The Disputed Accounts**

In October 2006, Ms. Gibbs opened a mortgage account with Bank of America. According to Ms. Gibbs, she paid that loan in full on July 16, 2013. In June 2007, Ms. Gibbs opened an auto loan account with Wells Fargo Bank, N.A. Ms. Gibbs alleges that she paid that loan in full on June 4, 2013. Ms. Gibbs

complains that, after she paid these loans, Trans Union continued to report that she was delinquent, even though Trans Union showed that both accounts had a $0 balance. On February 10, 2019, Ms. Gibbs, through counsel, sent a letter to Trans Union disputing its reporting of these two accounts. Trans Union forwarded the dispute to Bank of America and Wells Fargo for investigation. Both confirmed the accuracy of the information that Trans Union was reporting.

Following its investigation, Trans Union informed Ms. Gibbs that her credit report would reflect the following for the Bank of America account: (1) the balance on the account was $0; (2) the account was closed on July 16, 2013 and had a "Maximum Delinquency of 120 days in 07/2013;" (3) the account's "Pay Status" was "Account 120 Days Past Due Date;" (4) the last payment on the account was made on July 16, 2013; (5) the account was 30 days late in April 2013, 60 days late in May 2013, and 90 days late in June 2013; and (6) under "Remarks," the account was described as "CLOSED." (ECF No. 32-2 at 5.) For the Wells Fargo account, the credit report reflected: (1) the balance on the account was $0; (2) the account was closed on June 4, 2013; (3) the account's "Pay Status" was "Account 30 Days Past Due Date;" (4) the last payment on the account, in the amount of $6,392, was made on June 4, 2013; (5) the account was current in February and March 2013 and 30-days past due in April and May 2013; and (6) under "Remarks," the account was described as "DISP INVG COMP-CONSUM DISAGRS; CLOSED." (*Id.* at 6.)

### B. Procedural History

After Trans Union failed to resolve her dispute, Ms. Gibbs filed a complaint against Trans Union, Bank of America, and Wells Fargo on February 12, 2021. She amended her complaint on May 5, 2021, alleging Defendants violated their duties under the FCRA. She claims Trans Union violated its duty under 15 U.S.C § 1681i(a)(1)(A) to conduct a good faith and reasonable investigation into her notice of dispute and is violating 15 U.S.C. § 1681e(b) by not following reasonable procedures to assure maximum possible accuracy in its credit reports. She also argues Bank of America and Wells Fargo violated their duty under 15 U.S.C. § 1681s-2(b) to conduct a reasonable and good faith investigation into her dispute and failing to delete or correct the alleged inaccurate information. Trans Union filed a Motion For Judgment On The Pleadings, which is now ripe for decision.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court may grant a Rule 12(c) motion "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019) (quotation omitted). A court analyzes a Rule 12(c) motion under the same standards that apply to a Rule 12(b)(6) motion, construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopedic Assocs. II PC*, 935

F.3d 187, 195 (3d Cir. 2019). To survive a 12(c) motion, the complaint must contain sufficient factual matter to show that the claim is facially plausible, enabling the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

### III. DISCUSSION

To state a claim under the FCRA, Ms. Gibbs must establish that the information that Trans Union provided was inaccurate. *See Becker v. Early Warning Servs., LLC*, Civ. A. No. 19-5700, 2020 WL 2219142, at *8 (E.D.Pa. May 7, 2020) (citing *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 n.9 (3d Cir. 2011) (*per curiam*)). A credit report is inaccurate if the information in the report is factually incorrect or "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (quotation omitted). Under this standard, "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.'" *Schweitzer*, 441 F. App'x at 902 (quotation omitted). In determining whether reported information is misleading, courts view the information through the lens of a person in a position to make an adverse decision based on a credit report, *i.e.*, a creditor. *See, e.g.*, *Bibbs v. Trans Union LLC*, No. CV 20-4514, 2021 WL 695112, at *3 (E.D.Pa. Feb. 23, 2021).

4

The question of whether information that is "technically correct" is materially misleading is generally a matter for the jury. *Id.* at *4. But "where . . . the parties provide the reported information in dispute and the court determines only one reasonable interpretation of the report exists, a court may determine the accuracy of the report as a matter of law." *Samoura v. Trans Union LLC*, Civ. A. No. 20-5178, 2021 WL 915723, at *4 (E.D.Pa. Mar. 10, 2021). In determining whether technically correct information on a credit report is misleading, courts consider the credit report in its entirety rather than focusing on a single, isolated field. *See, e.g., Schweitzer*, 441 F. App'x at 900-01; *Bibbs*, 2021 WL 695112, at *7; *Hernandez v. Trans Union LLC*, No. 3:19-cv-1987-RV/EMT, 2020 WL 8368221, at *3 (N.D.Fla. Dec. 10, 2020).

Read as a whole, Ms. Gibbs's credit report is susceptible to only one reading: she paid her accounts in full in 2013 but was delinquent on those accounts before she paid them. Several aspects of the credit report lead to this conclusion. For each account, the report lists a $0 balance, notes that it is "closed," and shows the same date for the last payment, the last update, and the date of closure. In addition, the Ratings Key in each report stops in the month when the account closed. Read together, these entries describe an account that the consumer paid in full on the date of the last payment, leading the creditor to close the account that day.

Ms. Gibbs argues that it is impossible for her to be late on an account with a $0 balance, making the report misleading. And she's right, it is impossible. But

5

her argument proves too much. Because it is impossible for her to be late on an account with a $0 balance, no reasonable creditor would read the report that way. Instead, a reasonable creditor reviewing the report as a whole would adopt a logical reading of the credit report, in which she paid the account and no longer owes anything, rather than an illogical reading of the report. *See Ostrander v. Trans Union LLC*, No. 2:20-cv-05227-EGS, 2021 WL 3271168, at * 8 (E.D.Pa. July 30, 2021); *Gross v. Private Nat'l Mort. Acceptance Co., LLC*, 512 F.Supp.3d 423, 427 (E.D.N.Y. 2021) ("[a]n account with a $0 balance cannot currently be past due—what would the debtor have to pay to bring the account current").

Ms. Gibbs focuses on the fact that the "Pay Status" is the "current status of the account." (ECF No. 62 at 5.) But she bases that argument on a glossary of terms attached to the results of Trans Union's investigation following her dispute letter. Ms. Gibbs offers no basis to think that a creditor would receive that glossary. Because the Court must determine what a creditor would understand from the report, the Court will not consider the glossary. *See Bibbs*, 2021 WL 695112, at *3. Even if the Court did consider the glossary of terms, though, it would not help Ms. Gibbs's position because the glossary also states that for accounts "that have been closed and paid"—*i.e.*, accounts like Ms. Gibbs's accounts—"Pay Status represents the last known status of the account," not the current status. (ECF No. 32-2 at 3.)

Ms. Gibbs also appears to argue that the Court should not read the credit report as a whole because some computer algorithms focus only on the "Pay Status" trade line to decide whether to issue credit. But none of that is in Ms. Gibbs's Amended Complaint, and she therefore cannot rely on it in her Opposition. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181(3d Cir. 1988). Ms. Gibbs also notes that she pleads that her report is misleading, and so she does. But Ms. Gibbs's pleading does not control when it is at odds with the credit report attached as an Exhibit. *See Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). The Court therefore will not credit the allegation.

The Court's conclusion is consistent with the way other courts in this District have ruled in similar cases, including *Bibbs*, *Samoura*, and *Ostrander*. Ms. Gibbs tries to distinguish the decisions in *Bibbs* and *Samoura* by noting that, in those cases, the "Remarks" field explains that the account was "CLOSED DUE TO TRANSFER," while here the report just indicates that the accounts are "CLOSED." But that's a distinction without a difference. In each case, the credit report notes the date the account was closed, notes the date of the last payment, and stops reporting in the Ratings Key field after the account closed. And, Ms. Gibbs cannot distinguish *Ostrander*, in which the "Remarks" field noted that the account was "Closed." *Ostrander*, 2021 WL 3271168, at * 2.

Ms. Gibbs directs the Court to other decisions that have reached the opposite conclusion. *See Smith v. Trans Union, LLC*, No. 2:20-cv-4903, 2021 WL

7

1061213 (E.D.Pa. Mar. 19, 2021); *Barrow v. Trans Union LLC*, No. 2:20-cv-3628, 2021 WL 1424681 (E.D.Pa. Apr. 13, 2021). Those cases rest on the fact that one could interpret the credit reports at issue to suggest that the account was currently past due. But Ms. Gibbs's report notes that her delinquency on the Bank of America account occurred "in 07/2013" and her delinquency on the Wells Fargo account occurred "in 01/2013." (ECF No. 32-2 at 5, 6.) To the extent that the credit reports at issue in *Smith* and *Barrow* did not include that historic reference, they are not on all fours with this case.

Finally, Ms. Gibbs asks for leave to file a Second Amended Complaint. A party seeking leave to amend must attach its proposed amended pleading, so that the Court can assess it for, among other things, futility. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Ms. Gibbs has not attached a proposed amended pleading, so the Court cannot assess it. The Court therefore will not give her leave to amend at this stage, though she will have an opportunity to seek leave.

## IV.   CONCLUSION

A creditor can only read Ms. Gibbs's credit report one way. Because there is no room for interpretation, the Court will grant Trans Union's motion for judgment on the pleadings. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 28, 2021