IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHELLIE GIBBS,<br><br>    *Plaintiff*,<br><br>  v.<br><br>TRANS UNION LLC, et al.,<br><br>    *Defendants*. | Case No. 2:21-cv-00667-JDW |

**MEMORANDUM**

If movies have taught us anything, it's that when humans lose control to machines, things never go well. Thankfully, machines do not control us (at least not yet). Shellie Gibbs's effort to salvage her claims against Trans Union LLC and Bank of America, N.A., assume that the way that computer algorithms interpret a credit report defines whether the credit report itself is misleading. But that's not the relevant question under the Fair Credit Reporting Act. Instead, the Court's analysis must focus on the contents of the credit report itself, not the way that a computer interprets it. The Court has already held that the credit report itself is not misleading, and Ms. Gibbs has not made any allegation that changes that analysis. The Court will therefore deny as futile her motion to amend her complaint.

I.      **BACKGROUND**

    A.    **The Dismissed Complaint**

In her original complaint, Ms. Gibbs alleged that she had a mortgage account with Bank of America that she paid in full on July 16, 2013, and an auto loan with Wells Fargo Bank, N.A., that she paid in full on June 4, 2013. She complained that even though she had paid those accounts, as of February 10, 2019, TransUnion still reported the following.

- On the Bank of America account, (1) the balance on the account was $0; (2) the account was closed on July 16, 2013 and had a "Maximum Delinquency of 120 days in 07/2013;" (3) the account's "Pay Status" was "Account 120 Days Past Due Date;" (4) the last payment on the account was made on July 16, 2013; (5) the account was 30 days late in April 2013, 60 days late in May 2013, and 90 days late in June 2013; and (6) under "Remarks," the account was described as "CLOSED." (ECF No. 32-2 at 5.)

- For the Wells Fargo account, the credit report reflected: (1) the balance on the account was $0; (2) the account was closed on June 4, 2013; (3) the account's "Pay Status" was "Account 30 Days Past Due Date;" (4) the last payment on the account, in the amount of $6,392, was made on June 4, 2013; (5) the account was current in February and March 2013 and 30-days past due in April and May 2013; and (6) under "Remarks," the account was described as "DISP INVG COMP-CONSUM DISAGRS; CLOSED." (*Id.* at 6.)

2

TransUnion filed a motion for judgment on the pleadings, arguing that the credit report was not misleading. On September 28, 2021, the Court granted that motion. It held, "Read as a whole, Ms. Gibbs's credit report is susceptible to only one reading: she paid her accounts in full in 2013 but was delinquent on those accounts before she paid them." (ECF No. 66 at 5.) On October 12, 2021, Ms. Gibbs filed a Motion to amend the complaint. In her reply in support of that Motion, Ms. Gibbs makes clear that the focus of the amended complaint is an allegation about the allegedly misleading effect that TransUnion's reports have on computer algorithms. (*See generally* ECF No. 75.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15 conditions amendment of a pleading on the Court's leave or the opposing party's written consent. The rule instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal amendment regime helps effectuate the "general policy embodied in the Federal Rules favoring resolution of cases on their merits." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). The factors set out in the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962), guide a court's decision about whether to permit an amendment. A court may deny leave to amend based on undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, prejudice to the opposing party, and futility. Id. The *Foman* factors are not exhaustive, allowing a court to ground its decision, within reason, on consideration of other equitable factors,

3

such as judicial economy/burden on the court and the prejudice denying leave to amend would cause. *See USX Corp. v. Barnhart*, 395 F.3d 161, 167-68 (3d Cir. 2004).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). In determining whether a claim would be futile, "the district court applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).

## III. DISCUSSION

To state a claim under the FCRA, Ms. Gibbs must establish that the information that Trans Union provided was inaccurate. *See Becker v. Early Warning Servs.*, LLC, Civ. A. No. 19-5700, 2020 WL 2219142, at *8 (E.D.Pa. May 7, 2020) (citing *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 n.9 (3d Cir. 2011) (per curiam)). A credit report is inaccurate if the information in the report is factually incorrect or "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (quotation omitted). Under this standard, "a consumer

report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.'" *Schweitzer*, 441 F. App'x at 902 (quotation omitted). In determining whether reported information is misleading, courts view the information through the lens of a person in a position to make an adverse decision based on a credit report, i.e., a creditor. *See, e.g.*, *Bibbs v. Trans Union LLC*, No. CV 20-4514, 2021 WL 695112, at *3 (E.D.Pa. Feb. 23, 2021).

The question of whether information that is "technically correct" is materially misleading is generally a matter for the jury. Id. at *4. But "where . . . the parties provide the reported information in dispute and the court determines only one reasonable interpretation of the report exists, a court may determine the accuracy of the report as a matter of law." *Samoura v. Trans Union LLC*, Civ. A. No. 20-5178, 2021 WL 915723, at *4 (E.D.Pa. Mar. 10, 2021). In determining whether technically correct information on a credit report is misleading, courts consider the credit report in its entirety rather than focusing on a single, isolated field. *See, e.g., Schweitzer*, 441 F. App'x at 900-01; *Bibbs*, 2021 WL 695112, at *7; *Hernandez v. Trans Union LLC*, No. 3:19-cv-1987-RV/EMT, 2020 WL 8368221, at *3 (N.D.Fla. Dec. 10, 2020).

The Court has already held that TransUnion's credit report is susceptible only to a single reading and is not materially misleading. The Court based that ruling on its reading of the information that TransUnion will include in Ms. Gibbs's credit

report, not on allegations (or the absence of allegations) about the ways that third parties might read the report.

Nothing in Ms. Gibbs's proposed amended complaint would lead to a different outcome. The question the Court must answer is whether the credit report is misleading, not whether some third party could read the credit report incorrectly. Indeed, there is no way for the Court to control the way people read a credit report, nor is there a way for the Court to know what quirk of computer programming leads a particular algorithm to draw particular conclusions from aspects of computer report. Even if the Court accepts that lenders use computer algorithms that misinterpret the status of Ms. Gibbs's accounts, and that the lender who denied her pre-approval for a home loan did so in reliance on an algorithm's misinterpretation of Trans Union's reporting data, that does not make it plausible that the credit report itself is inaccurate; it might only establish that the lender is relying on an illogical algorithm.

Credit reporting information can be expected to have an adverse effect without being misleading. But Trans Union is not obligated to provide credit reporting that will not have an adverse effect, it is only obligated to provide reporting that is not inaccurate or misleading. Therefore, because Ms. Gibbs's proposed amended complaint fails to allege facts that if true, would demonstrate that Trans Union violated its obligations under the FCRA, the Court will not give her leave to amend.

## IV.   CONCLUSION

To state a claim under the FCRA, Ms. Gibbs must show that her credit report is misleading, not that some machine (or even a person) misinterprets that report. She has not, and cannot. The Court will therefore deny her leave to amend.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

December 13, 2021